45645, 45646.   ATLANTIC ALUMINUM & METAL
DISTRIBUTORS v. ADAMS et al.; and vice versa.

Whitman, Judge. These appeals arise out of an action brought by Atlantic Aluminum & Metal Distributors, d/b/a Atlantic Aluminum, against Kenneth Adams and Adams Machine & Tool Company, Inc. The complaint contains two counts. Count 1 alleges both defendants are jointly indebted to plaintiff for a principal sum, plus interest and attorney's fees, by virtue of 3 promissory notes. Count 2 alleges that defendant, Adams Machine & Tool Co., Inc., is indebted for another sum, plus interest and attorney's fees, by virtue of a fourth promissory note.

The "Answer & Counter Claim" of the defendants first admits the alleged indebtedness in each count and then alleges: "Counter claim. [1] The defendant, Adams Machine & Tool Company, Inc., has purchased from the plaintiff over a period of the last twenty-four months aluminum in the total amount of $144,519.59 and said aluminum was sold by plaintiff to Adams Machine & Tool Company, Inc., for specific manufacturing purposes, and of the aluminum sold during the period aforesaid at least $50,000 worth thereof was defective, unusable, and not suited for the manufacturing purposes for which it was sold, intended and warranted, and as a direct result thereof the plaintiff has injured and damaged Adams Machine & Tool Company, Inc. in the sum and amount of $50,000, for which it sues the plaintiff on this counterclaim. [2] By way of further answering as to Count 1 of the complaint as to Kenneth Adams, the defendant shows that he executed said notes sued upon as a guarantor of Adams Machine & Tool Company, Inc. only, and until such time as the counter claim of Adams Machine & Tool Company, Inc. herein is determined no further action should be taken against this individual defendant in any way or manner whatsoever. Wherefore, defendants pray that: (A) A judgment be awarded against the plaintiff and in favor of Adams Machine & Tool Company, Inc. (on the counter claim) for $50,000; (B) That the amount owed by defendant to plaintiff in Counts 1 and 2 be deducted and set off against the amount owed by plaintiff to defendant and that the notes be canceled and the overage be awarded to defendant Adams Machine & Tool Company, Inc. in the form of a judgment against the plaintiff. . ."

The plaintiff moved for a summary judgment relying on the pleadings and the deposition of defendant Kenneth Adams. The trial court entered an order granting plaintiff's motion for summary judgment as to both counts of its complaint, but denying plaintiff's motion as against the defendants' counterclaim. Accompanied by a certificate for immediate review, plaintiff has appealed from the order insofar as it denied summary judgment against the counterclaim and has enumerated the same as error.

The defendants also appealed from the order insofar as it granted summary judgment to plaintiff on the main action and enumerate the same as error. The defendants also enumerate as error another order of the trial court ordering "that there be a separate trial on the counterclaim filed by Adams Machine & Tool Co., Inc. against the plaintiff, as provided in Section 81A-142 (b), Code of Georgia Annotated."

From the evidence presented in connection with the motion for summary judgment it appears that defendant Adams Machine & Tool Co., Inc. ordered 185,000 pounds of 2-3/8" Rod 2024-T3-351 aluminum from the plaintiff at a specified price per pound contingent upon the plaintiff delivering specified quantities of the order on certain dates ranging from December 18, 1967, through March 15, 1968. On April 3, 1968, a similar order was placed for an additional 250,000 pounds of the material, with a specified schedule of delivery dates and with an express reservation of a right of refusal of any shipment or part thereof not up to specifications in machineability or chemical analysis.

Defendant Kenneth Adams testified on cross examination by deposition taken for the purpose of discovery that he was the president and chief executive officer of the defendant corporation. He testified that he was skeptical of plaintiff's offer to sell him the aluminum because it was French or Belgian aluminum and that he had never machined any foreign-made aluminum before, but because of the plaintiff's familiarity with the product to be manufactured and on assurances from the plaintiff that there would be no machining problems, they agreed to purchase the aluminum but limited the initial agreement to a half million pounds, with further orders to be dependent on experience with the material. He further testified that between 30 and 60 days after delivery of the first quantity of the material it was discovered that the material was difficult to machine and was unstable. The material was unstable in the sense that a part made from it would not hold its machined dimensions and would change size within 48 hours. Adams further testified that they telephoned and complained to plaintiff about the material but were told that they would do nothing and that "we were stuck with it." Adams then testified that they contin-

ued to accept deliveries of the aluminum and rejected none of it; that they purchased some special machinery and by performing a second machining operation they were able to overcome the instability problem and produced acceptable parts.

It was established that the defendant corporation paid its account for the aluminum it was receiving, knowing that it was unstable and difficult to machine. It was also established that the unconditional promissory notes, which are the subject of the plaintiff's complaint, were executed November 14, 1968, more than six months after the last delivery of aluminum to the defendant, and were given as payment of the final balance owing on the account at that time. One of these notes was paid when due.

Defendant Adams testified that the defendant corporation had sustained a fire loss for which there was an unsettled insurance claim; that they did not deny they owed the debt to plaintiff evidenced by the notes; and that "we were willing to pay if they went along with us until we got our insurance settlement." *Held:*

1. The defendant corporation's counterclaim for damages is predicated upon an allegation that the aluminum was defective. Assuming that it was, the buyer had a right to inspect it (*Code Ann.* § 109A-2—513) and to reject it if it was not conforming (*Code Ann.* § 109A-2—602). Acceptance of goods occurs when the buyer, among other things, fails to reject or does any act inconsistent with the seller's ownership (*Code Ann.* § 109A-2—606). The evidence in this case is that all the aluminum with the exception of the first 15,000 pounds was accepted with knowledge of the alleged defects, that it was all used, and, further, that it was all paid for. All payments were made with full knowledge of the claimed defects. The alleged defects, if any, were waived. There being no basis for any recovery on the counterclaim, the plaintiff's motion for a summary judgment in its favor against the counterclaim should have been granted and the trial court erred in not doing so. See *Lincoln Lumber Co. v. Keeter,* 167 Ga. 231 (1) (145 SE 68); *Wilson v. Willingham-Tift Lumber Co.,* 60 Ga. App. 901 (1) (5 SE2d 611); Roanoke City Mills v. Whelchel (CCA 5) 208 F2d 66. The

motions for summary judgment in this case were heard, insofar as evidence is concerned, on the depositions of the defendant Kenneth Adams at the instance of plaintiff. Adams was president and chief executive officer of the defendant Adams Machine & Tool Company, Inc. The rule as to self-conflicting testimony of a party applies in summary judgment proceedings. *Standard Oil Co. v. Harris,* 120 Ga. App. 768, 776 (172 SE2d 344), citing *Chandler v. Gately,* 119 Ga. App. 513 (167 SE2d 697).

2. With defendant Adams and the defendant corporation having admitted their joint liability on the notes set forth in Count 1 of the plaintiff's complaint, and with the defendant corporation having admitted its liability as to the note set forth in Count 2 of the plaintiff's complaint, the trial court did not err in granting plaintiff a summary judgment therefor.

3. In view of our ruling in Division 1, we do not reach the enumeration of error relating to the trial court's order of a separate trial on the counterclaim.

The grant of summary judgment for plaintiff below as to the main action is affirmed. The denial of summary judgment for plaintiff below as to the counterclaim of the defendants is reversed.

*Judgment reversed with direction that summary judgment be entered in accordance with this opinion. Bell, C. J., and Quillian, J., concur.*

Argued September 9, 1970—Decided February 26, 1971.

*Mitchell & Mitchell, Warren N. Coppedge, Jr.,* for appellant.
*Cook & Palmour, A. Cecil Palmour,* for appellees.