52083, 52084. MIDTOWN PROPERTIES, INC. et al. v. GEORGE F. RICHARDSON, INC.; and vice versa.

STOLZ, Judge.

This is a suit on a contract and for quantum meruit instituted by George F. Richardson, Inc. (Richardson) against Midtown Properties, Inc. (Midtown) and Mr. Dewey Nabors. Nabors operates a real estate brokerage under the registered trade name Nabors & Co. Nabors & Co. shares an office, telephone and secretary with Midtown, a real estate management corporation wholly owned by Nabors. Nabors also is a director and president of Midtown.

Midtown hired a Mr. Robert Keaton to oversee completion of a shopping center. Nabors asked Keaton to order, in his spare time, siding, pipes and flooring for Nabors' personal residence, directing him to order these materials in the name of Nabors or Nabors & Co. Keaton contacted Richardson for the flooring and although he never said that he was acting on behalf of Midtown, this apparently was Richardson's understanding. Keaton was working from Midtown's construction trailer, and all written communications from Richardson were addressed to Midtown's main office. At no time did Midtown, Nabors, or Keaton tell Richardson for whom Keaton was working. However, Keaton signed the installation contract as purchasing agent for Nabors & Co.

After installation, invoices were sent to Midtown which remained unpaid, apparently because of Nabors' dissatisfaction with the floor. Richardson then sued Midtown and Nabors; the trial court directed verdicts against both defendants.

1. Appellant Midtown assigns error to the trial court's refusal to grant its motions for summary judgment and for a directed verdict. Essentially, Midtown contends that it had not signed the flooring contract nor had it authorized Keaton to deal with Richardson. Allegedly, it was not a party to the contract, had received no benefits from the contract, and therefore could not be sued on the contract.

The record in this case contains a great deal of evidence supporting Richardson's contention that Keaton was acting as the apparent agent of Midtown, as well as other evidence that Midtown was the alter ego of Nabors. For this reason, it was not error for the trial court to refuse both the motion for summary judgment and the motion for a directed verdict in Midtown's favor.

2. Similarly, Nabors enumerates as error the denial of his motion for a directed verdict. First, Nabors contends that Richardson was barred from maintaining a suit against him insofar as Richardson failed to elect between suing the agent (Keaton) or his principal (Nabors). However, the trial court's direction of a verdict for Keaton effectively removed the agent from the case and, in so doing, eliminated the necessity of making an election. Second, Nabors' contention that the floor, admittedly permagrain, was defective, relates only to the amount that Richardson may recover; it has no bearing whatsoever upon the issue of liability.

On the other hand, since the evidence shows that Nabors engaged Keaton to order the permagrain oak flooring, that Keaton contracted with Richardson on behalf of Nabors, that permagrain flooring was installed, and that Richardson's invoices had never been paid, this enumeration of error has no merit.

3. The appellants also enumerate as error the trial court's exclusion of evidence offered by Nabors as to the defectiveness and value of the floor as installed. The trial

court allowed Nabors to testify that the installed floor was dull, chipped, gouged, and cracked. However, Nabors also attempted to testify that the lack of shine meant that the floor was defective because permagrain is supposed to be a shiny material. This he knew from reading a brochure and from information given him by an architect. He admittedly could not recognize permagrain, but he had seen other permagrain floors when someone had pointed them out to him. This testimony was excluded by the trial court.

"Where the question under examination, and to be decided by the jury, shall be one of opinion, any witness may swear to his opinion or belief, giving his reasons therefor; but if the issue shall be as to the existence of a fact, the opinions of witnesses, generally, shall be inadmissible." Code Ann. § 38-1708. In this case, Nabors could testify that the floor was dull, gouged, and cracked, for those were characteristics readily observable and within his personal knowledge. However, his testimony that the floor was defective was inadmissible. Nabors gave no competent evidence as to the reasons underlying his opinion. As to his knowledge obtained from reading a manufacturer's brochure, the brochure, and not Nabors' self-serving testimony, was the best evidence of permagrain's characteristics. As to the information given Nabors by an architect or other persons, this was inadmissible hearsay.

Since Nabors produced no competent testimony, and since the characteristics of good (as opposed to defective) permagrain are not within a layman's ordinary knowledge, expert testimony was necessary. An expert is one who is knowledgeable in a specialized field, that knowledge being obtained from either education or personal experience. See *Carter v. Marble Products, Inc.,* 179 Ga. 122 (175 SE 480). Nabors' testimony clearly indicates that he was not so qualified, and the trial court did not err in excluding this testimony.

Nabors also attempted to testify that the floor, lacking permagrain characteristics, was worth only what a regular oak floor would have been worth. However, his only evidence as to the value of oak floors was based on quotations he had obtained from other suppliers, and

this, being inadmissible hearsay, was incompetent to support any comparison. The trial court correctly excluded this testimony from evidence.

4. Both Midtown and Nabors assign error to the court's direction of verdicts against them in favor of plaintiff Richardson.

As to Nabors, the directed verdict was demanded, since the evidence was uncontroverted that Nabors directed Keaton to order the permagrain, that the contract was signed by Keaton on his behalf, that the flooring was installed and that it was a permagrain floor.

As to Midtown, however, the directed verdict was error. Richardson's contention that Keaton had express authority from Midtown, is disputed by the evidence. Although there is ample evidence to indicate that Keaton was acting with apparent authority from Midtown, nevertheless Midtown did not sign the installation contract. The contract was executed by Keaton only in the name of Nabors & Co. Mere knowledge of Keaton's dealings would not make Midtown liable on the contract. See *Consolidated Lumber Co. of Ga. v. Ocean Steamship Co.,* 142 Ga. 186 (1) (82 SE 532). Nor did Midtown become a party to the contract as a matter of law simply because Richardson understood that to be the case. Nor may a judge direct a verdict because he thinks the evidence to be strongly weighted in favor of the moving party. See *Northwestern University v. Crisp,* 211 Ga. 636, 647 (88 SE2d 26); *Blackburn v. Lee,* 137 Ga. 265 (73 SE 1).

Furthermore, Richardson's contention that Midtown was the alter ego of Nabors and therefore liable on Nabors' contract, is not susceptible of summary resolution in this case. Notwithstanding Nabors' position as sole shareholder, director, and president of Midtown, the corporation is prima facie a distinct legal entity with rights and liabilities which are separate from those of Nabors. See *Schwob Mfg. Co. v. Huiet,* 69 Ga. App. 285 (25 SE2d 149). See generally Nadler, Georgia Corporation Law, § 3-23, p. 101 (1971) and cits. Whether or not the corporate entity should be disregarded depends upon the particular circumstances involved, and in this case, is a matter properly for the jury. See generally, Nadler, supra, § 3-14.

While Richardson has presented evidence supporting several theories for holding Midtown liable, nevertheless in the face of a contract signed only by Nabors & Co., there is a material conflict in the evidence sufficient to warrant jury resolution. "[A] verdict should not be directed unless there is no issue of fact, or unless the proved facts, viewed from every possible legal point of view, can sustain no other finding than that directed." *Norris v. Coffee,* 206 Ga. 759 (4) (58 SE2d 812) and cits. Thus, as to Midtown, this contention is well taken.

5. Nabors further contends that his defense of improper venue should have been decided by a jury. Nabors testified that, prior to trial, he had lived only in Cobb County, moving in March 1975 to Peach County, Georgia. Juxtaposed with this testimony is evidence presented by Richardson which, if believed, would effectively impeach Nabors, proving that the defendant was, at all times pertinent, a resident of Fulton County.

Although a jury trial as to venue is generally warranted where there is a direct conflict in the evidence, to have held a jury trial in this case would have been premature. Suits against joint obligors may be tried in the county wherein either defendant resides. Code Ann. § 2-4904. Since venue was proper as to co-defendant Midtown, Nabors could be added to this suit despite the question as to venue over him. However, in the event that the jury returns a verdict exonerating Midtown, then a jury trial would be required to resolve the conflict in evidence as to Nabors' residency. If the jury in this second trial determines that venue was properly laid, then the directed verdict against Nabors shall be made the judgment of the court; otherwise, the court will be without jurisdiction to enter any judgment against defendant Nabors. See *Southeastern Truck Lines v. Rann,* 214 Ga. 813 (108 SE2d 561).

6. Finally, the appellants contend that Richardson was not entitled to prejudgment interest. Code Ann. § 57-110 provides that: "All liquidated demands, where by agreement or otherwise the sum to be paid is fixed or certain, bear interest from the time the party shall become liable and bound to pay them; if payable on demand, from the time of the demand." In this case, the

complaint demands a sum certain with interest thereon based upon the contract to install permagrain flooring. The interest was computed from the date of the invoice. This is a liquidated demand because both the debt and the time of demand are fixed. See, e.g., *Swanson v. Chase,* 107 Ga. App. 295 (2) (129 SE2d 873); *Shure v. Willner & Millkey,* 126 Ga. App. 368 (190 SE2d 620).

The fact that the plaintiff demanded a usurious amount of interest in its complaint, does not bar its recovery of lawful interest where, during the trial, Richardson's evidence was directed only at the principal amount due. During the motions made at the close of the evidence, Richardson indicated that it had intended to seek only the lawful amount of interest. The trial court's order awarding 7%interest per annum is tantamount to a tacit approval of Richardson's attempt to abandon the unlawful rate and seek only the lawful charge, in effect an effort to amend its complaint as provided under Code Ann. § 81A-115 (a). Under the Civil Practice Act, amendments after the pre-trial order are to be liberally granted by the court as justice requires. We find no error in the court's award of interest on the directed verdict against Nabors for the amount of the contract. Since Midtown is to be given a new trial, where the evidence and verdict may differ from its first trial, we make no declaratory ruling as to it. See *Shure v. Willner & Millkey,* supra.

7. Richardson has filed a cross appeal in this case, assigning as error the trial court's order refusing its claim for attorney fees. Code Ann. § 20-1404 provides that, "The expenses of litigation are not generally allowed as a part of the damages; but if the defendant has acted in bad faith, or has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." In the case at bar, the defendants answered, asserting among their various defenses, that Midtown was not a party to the contract, that Nabors was not amenable to suit because of venue, or that the work done did not conform to the contract. There being no evidence in the record of bad faith, litigiousness, or unnecessary trouble to the plaintiff, the award of attorney fees would not have been authorized. *Palmer v.*

*Howse,* 133 Ga. App. 619 (212 SE2d 2).

For the reasons outlined in Division 4 above, the directed verdict of the trial court must be reversed as to defendant Midtown. As discussed in Division 5 above, the directed verdict as to defendant Nabors is affirmed provided that venue is proper as to him; otherwise reversed.

*Judgment affirmed on condition as to appellant Nabors; reversed and remanded for new trial as to appellant Midtown Properties, Inc. in the main appeal. Judgment affirmed in the cross appeal. Bell, C. J., and Clark, J., concur.*

ARGUED APRIL 6, 1976 — DECIDED JULY 1, 1976.

*Schreeder, Wheeler & Flint, David H. Flint,* for appellants.

*Stokes & Shapiro, Herman L. Fussell,* for appellee.